LOCAL 189, SERVICE EMPLOYEES
UNION, Plaintiff,

v.

SCOT LAD FOODS, INC., Defendant.

No. 80C6140.

United States District Court,
N. D. Illinois,E. D.

April 29, 1981.

William F. Lennon, Chicago, Ill., for plaintiff.

James R. Scott, Lindner, Honzik, Marsack, Hayman & Walsh, Milwaukee, Wis., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Local 189, Service Employees Union ("Union") brought this action to compel Scot Lad Foods, Inc. ("Scot Lad") to arbitrate a labor dispute. Scot Lad has counterclaimed seeking tripartite arbitration among Scot Lad, Union and Teamsters Locals 705 and 710 (collectively "Teamsters"). Several motions are now before this Court:

(1) Union's motion for summary judgment on its complaint;

(2) Union's motion to dismiss the counterclaim;

(3) Scot Lad's motion for summary judgment on its counterclaim;

(4) Scot Lad's motion to dismiss the complaint under Fed.R.Civ.P. ("Rule") 12(b)(7) for failure to join indispensable parties; and

(5) Scot Lad's alternative motion for an order joining Teamsters in this action.

For the reasons stated in this memorandum opinion and order each of Union's motions is granted and each of Scot Lad's motions is denied.

*Facts*

Scot Lad operates a wholesale food distributorship in Lansing, Illinois. Three different unions represent its employees: Union represents plant guard and security personnel, Teamsters Local 705 represents local truck drivers and Teamsters Local 710 represents long distance truck drivers.

Scot Lad's delivery trucks use a tachograph, a device that records the operating time of a truck. Before a truck leaves its Lansing facility a disc is placed in the tachograph, the timer is wound and the device is sealed. Upon the truck's return the seal is broken and the disc removed.

This action stems from Scot Lad's having reassigned the task of inserting and removing the discs, previously performed by Teamsters members, to members of Union. Union objected that Scot Lad cannot require Union's members to handle tachographs under their present collective bargaining agreement (the "Contract").[1] It invoked the grievance procedures under Article 6 of the Contract:

> Should any differences, disputes or complaints arise over the interpretation or application of the contents of this Agreement, there shall be an earnest effort on the part of both parties to settle such promptly through the following steps:
> *Step 1.* By conference between the steward, sergeant and the employee or employees involved.
> *Step 2.* By conference between the steward, sergeant, personnel manager and employee or employees involved.
> *Step 3.* By conference between the steward, personnel manager, sergeant, employee and an official of the union.
> *Step 4.* In the event the previous steps fail to settle the complaint or grievance, the union may request that the matter be referred to a Board of Arbitration.

When the first three steps failed, Union requested submission of the matter to arbitration, and Scot Lad joined Union by sign-

---

1. Union also argues that if members are required to perform the new task a wage adjustment is necessary. That contention clearly does not create a jurisdictional dispute and must be arbitrated by Scot Lad under the Contract.

ing a joint "Request for Arbitration Panel" mailed to the Federal Mediation and Conciliation Service. Scot Lad then sought to withdraw from that commitment. It takes the position that it is willing to arbitrate the dispute, but only if Teamsters are joined in a tripartite arbitration.

### Duty To Arbitrate

█ Arbitration is a contractual remedy that can be ordered by a court only if the parties intended to bind themselves to do so. At the outset this Court must therefore determine whether Contract Article 6 mandates arbitration and, if not, whether there is any other basis for requiring Scot Lad to arbitrate the current dispute.

█ Article 6 states that there "shall be an earnest effort" by the parties to settle disputes using Steps 1–4. Like an agreement to agree, that phrase does not itself establish binding obligations. Step 4, the arbitration provision, states only that the union "may request" arbitration. While that language too is far from a model of clarity, for summary judgment purposes the inference can clearly be drawn that it gives Scot Lad the option of rejecting a request for arbitration (the inference most favorable to Scot Lad's position).

█ While under that reading the Contract gave Scot Lad the opportunity to refuse Union's arbitration request, arbitration was nonetheless a contemplated component of the established grievance procedures. Union exercised its right to invoke the arbitration provision in this specific dispute by asking Scot Lad to sign a form requesting a panel of arbitrators. Scot Lad *agreed* to arbitrate and signed the panel request form. Once Scot Lad had so accepted Union's request for arbitration, each party was bound under familiar contract concepts of offer and acceptance. Such a construction of the Contract and the parties' conduct is further supported by, and consistent with, the Supreme Court's well-established presumption in favor of arbitra-

tion. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

Indeed, though this added factor is non-determinative, *both* parties still seek arbitration. They dispute only the necessity of including Teamsters. In that respect, Scot Lad relies on a number of cases in which two unions have been involved in jurisdictional disputes and courts have ordered three or more parties to arbitrate.

█ In the present posture of the litigation this Court could not grant Scot Lad's motion for summary judgment on its counterclaim and order tripartite arbitration. Teamsters are not parties to this litigation and cannot be included in any form of relief. Thus the real issue is whether the Court should order joinder of Teamsters or, in the alternative, dismiss this action for Union's failure to join those parties.

Rule 19(a) provides:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Under that provision the question is whether the absence of Teamsters will subject Scot Lad to "a *substantial* risk of incurring ... inconsistent obligations...."[2]

In judicial terms the notion of tripartite arbitration had its origin in *Transportation-Communication Employees Union v. Union*

---

**2.** Subparagraphs (1) and (2)(i) do not apply to Teamsters under the same analysis as con-

tained in the remainder of this opinion.

*Pacific Railroad Co.,* 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966). There the advent of a computer had resulted in the elimination of two jobs with the creation of only one new job. Employees were represented by two separate unions, one of which brought the problem before the Railroad Adjustment Board ("Board"), a body quite similar to an arbitration panel. Because it considered that *both* unions ought to have been before the Board, the Court vacated the Board's decision (385 U.S. at 161–62, 87 S.Ct. at 371):

> There are two kinds of these jurisdictional disputes. Both are essentially disputes between two competing unions, not merely disputes between an employer and a single union. The ordinary jurisdictional dispute arises when two or more unions claim the right to perform a job which existed at the time their collective bargaining contracts with the employer were made. In such a situation it would be highly unlikely that each contract could be construed as giving each union the right to be paid for the single job. But the dispute before us now is not the ordinary jurisdictional dispute where each union claims the right to perform a job which existed at the time its collective bargaining agreement was made. Here, though two jobs existed when the collective bargaining agreements were made and though the railroad properly could contract with one union to perform one job and the other union to perform the other, automation has now resulted in there being only one job, a job which is different from either of the former two jobs and which was not expressly contracted to either of the unions.

■ As in the first situation described in *Transportation-Communication Employees Union,* the tachograph task existed at the time all collective bargaining agreements involved in this action were written. That factor alone might suffice to take this case out of the area of disputes requiring tripartite arbitration. But this is an *a fortiori* situation, for the unions here are not *competing* for a single job. On the contrary, Union is trying to *protect* its members from performing a specific task.

Should an arbitrator hold that Union's contract prevents assignment of the task to its members, Teamsters could scarcely, through arbitration or otherwise, win the right not to perform a task they had previously performed under their existing contract. And if the arbitrator holds otherwise, Teamsters members would still have their jobs and would be rid of that task. Little wonder then that Teamsters have neither filed a grievance nor attempted to intervene in this action. Clearly whatever slight possibility of Scot Lad being subjected to inconsistent adjudication might exist, it is not the *substantial* possibility required by Rule 19. Wherever tripartite arbitration has been ordered (or a third party has been found "necessary" under Rule 19), the cases have involved two unions competing for some benefit. *See, Window Glass Cutters League v. American St. Gobain Corp.,* 428 F.2d 353 (3d Cir. 1970); *Columbia Broadcasting System, Inc. v. American Record & Broadcasting Association,* 414 F.2d 1326 (2d Cir. 1969); *Edmos Corp. v. Textile Workers,* 80 LRRM 3225 (S.D.N.Y.1972).

### Conclusion

This Court's determination that arbitration is required, but that tripartite arbitration is not, effectively disposes of this case. Accordingly this Court specifically finds that there is no remaining genuine issue as to any material fact and that Union is entitled to a judgment as a matter of law. Union's motion for summary judgment is granted and the parties are ordered to proceed to arbitration. Scot Lad's motions are denied and its counterclaim is dismissed.