### RCA CORPORATION
v.
### LOCAL UNION 1666 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO and Local Lodge No. 1984 of District Lodge No. 98, International Association of Machinists and Aerospace Workers, AFL–CIO.

Civ. A. No. 85–3853.

United States District Court, E.D. Pennsylvania.

April 8, 1986.

---

Stephen C. Richman, Philadelphia, Pa., for Local 1666.

Stuart W. Davidson, Philadelphia, Pa., for Local 98.

John H. Leddy, Philadelphia, Pa., for RCA Corp.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

RCA Corporation, on July 3, 1985, filed an action against the above defendants pursuant to Section 301 of the Labor Management Relations (Taft-Hartley) Act of 1947, 29 U.S.C. § 185, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking relief in the form of, *inter alia*, an injunction directing the two defendants to participate in a "tripartite arbitration" to resolve a dispute over certain work assignments made by the plaintiff.

The employees at RCA's Lancaster facility are represented by two labor unions, the International Brotherhood of Electrical Workers, AFL–CIO, Local Union 1666 (hereinafter IBEW), and the International Association of Machinists and Aerospace Workers, AFL–CIO, Local Lodge No. 1984 of District Lodge No. 98 (hereinafter IAM), *i.e.*, the two defendants. During 1983, RCA made a series of work assignments to employees represented by the IBEW. The IAM, claiming the work in question should have been assigned to its member employees, filed seven (7) grievances protesting said work assignments, and the grievances were processed according to the terms of the RCA–IAM collective bargaining agreement. (See Plaintiff's Complaint, Ex. B, Article 11).

The IBEW, on February 10, 1985, filed a charge against the IAM with the president of the AFL–CIO, the parent of both locals, alleging the IAM had violated the organization's Constitution by filing the said grievances. The "Impartial Arbitrator" who heard the complaint held the IAM had not violated the AFL–CIO's Constitution; he made no finding, however, as to whether RCA had properly given the disputed work assignments to IBEW member employees. The IBEW has since refused RCA's request to participate in the arbitration of the grievances filed by the IAM. Likewise, the IAM has stated it would object to any such participation by the IBEW. Further, a representative of the IBEW has stated that should the decisions in the RCA–IAM arbitrations adversely affect IBEW member

employees, then the IBEW will resort to the arbitration procedures provided for in the RCA–IBEW collective bargaining agreement. (See Plaintiff's Complaint, Ex. A, and Plaintiff's Motion for Summary Judgment, Affidavit of Donald L. Stein).

The matter comes before us at this time for disposition of the parties' cross-motions for summary judgment. Based upon our review of the pleadings in this matter and the affidavit of Donald L. Stein, we find there exists no genuine issue as to any material fact precluding the entry of summary judgment in favor of any of the parties. F.R.Civ.P. 55(c).[1] The facts of this case are as we have stated above. Therefore, we address the legal issues raised by the parties' motions.

The plaintiff, relying principally upon *Columbia Broadcasting System, Inc. (CBS) v. American Recording and Broadcasting Association,* 414 F.2d 1326 (2d Cir.1969), and its progeny within and outside the Third Circuit, argues that the considerations of practicality, economics and convenience require that the two defendants be compelled to submit to tripartite arbitration the seven grievances involved. (See Plaintiff's Complaint, Exs. C–1 through 7). RCA, naturally, seeks to avoid the dilemma of having to cope with inconsistent arbitration awards should the panel in the RCA–IAM arbitration rule in favor of the IAM and a future panel in an RCA–IBEW arbitration rule in favor of the IBEW.[2]

The IAM objects to the intervention of the IBEW in the RCA–IAM arbitrations, and argues that, contrary to RCA's assertions, it is "virtually inconceivable" that the plaintiff would ever be faced with inconsistent arbitration awards. Therefore, the IAM contends that it would not be appropriate for this Court to order tripartite arbitration in this case. As authority, the

IAM relies primarily upon *Local 189, Service Employees Union v. Scot Lad Foods, Inc.,* 513 F.Supp. 839 (N.D.Ill.1981). It also cites *Armstrong World Industries, Inc. v. Garden Spot Lodge 928, et al.,* Civil Action No. 83–1963, slip op. (E.D.Pa.1983), for the proposition that only if and when RCA is faced with such inconsistent awards should it be allowed to obtain tripartite arbitration.

The IBEW argues it should not be forced to participate in the arbitration of the RCA–IAM dispute for a number of reasons. In its answer, the IBEW alleges this Court lacks jurisdiction to issue such an order. In its summary judgment motion, the IBEW first argues that because its collective bargaining agreement with RCA does not provide for submission of such disputes to tripartite arbitration, this Court cannot compel same. The IBEW next argues that since six (6) of the seven (7) grievances the plaintiff seeks to force it to participate in involve past and completed work which could have no prospective effect on the parties' relationships, the IBEW has "no reason to participate, as it has no stake in the proceedings". (IBEW's Brief at page 9). Third and finally, the IBEW argues it would be stripped of the procedural protections and benefits it enjoys under the RCA–IBEW contract if this Court granted the relief RCA seeks.

We recognize, at the outset, that logic and common sense appear to dictate that this dispute be resolved by tripartite arbitration. Considerations of practicality, economics, efficiency, consistency and convenience weigh heavily in the plaintiff's favor. We also recognize and consider the defendants' vigorous arguments in support of their positions.

The Second Circuit Court of Appeals in *Columbia Broadcasting System, Inc.*

---

**1.** The only factual issue of any significance we can discern in this matter is whether the IBEW will resort to the arbitration provisions of the RCA–IBEW collective bargaining agreement should it be adversely affected by a decision in favor of the IAM in the RCA–IAM arbitrations. For the reasons stated herein, we do not find this issue to be genuine and/or material.

**2.** The collective bargaining agreements of both unions provide that if RCA fails to comply with an arbitration award the aggrieved party is released from its no-strike obligation and may strike to enforce its claim. (See Plaintiff's Complaint, Ex. A, ¶ 2.02 and Ex. B, ¶ 2.05).

(CBS) v. American Recording and Broadcasting Association, supra, held that it is within the discretionary power of a district court under § 301 of the Taft-Hartley Act to order tripartite arbitration of work assignment disputes between two unions and the employer. The Second Circuit further held that the district court had properly so exercised its discretion in that instance.[3] As to the jurisdictional issue, the Second Circuit stated:

> There is ample authority holding that § 301 gives the federal courts broad jurisdiction to deal with many types of controversies that arise between labor and management ... This being so, the district court correctly found it had jurisdiction over a work assignment dispute between two unions when both unions had contracts with the same employer, and the employer, even though it does not claim a violation of either contract, seeks judicial action. (Citations omitted). Surely the taking of jurisdiction by the district court in the present dispute is in line with the overall national policy of furthering industrial peace by resort to agreed-upon arbitration procedures.

*Id.* at 1328.

■ The Third Circuit, unfortunately, has not had the opportunity to directly address the issues raised by this action and, thus, we have little guidance as to how our own Circuit would rule. The Third Circuit Court, however, has stated in dicta "it appears that on a proper record a District Court clearly would have the authority to provide for joint arbitration of a labor dispute". *Window Glass Cutters v. American St. Gobain Corp.*, 428 F.2d 353 (3d Cir.1970). *See also Association of Scientists and Professional Engineering Personnel v. International Federation of Professional and Technical Engineers*, 107 L.R.R.M. (BNA) 2098 (E.D.Pa.1980), aff'd. without op., 639 F.2d 771, cert. den., 451 U.S. 908, 101 S.Ct. 1977, 68 L.Ed.2d 297

(1981). Believing the Third Circuit would rule as did the Second Circuit as to the issue of jurisdiction, the remaining question is whether we should so exercise our discretion.

■ The IAM and the IBEW, as stated earlier, argue that RCA's assertion that it could be subjected to inconsistent arbitration awards is purely conjectural, thereby making this case inappropriate for compulsory tripartite arbitration. We disagree and believe the parties' reliance upon *Local 189 v. Scot Lad Foods, supra,* is misplaced. *Scot Lad Foods* differs drastically from the facts of this case. The plaintiff in that case was seeking to prevent its member employees from being assigned certain tasks. The union was not competing for some benefit, such as work assignments, with a fellow union. As recognized by the Court in *Scot Lad,* if the plaintiff union lost the arbitration, the non-party union would benefit, *i.e.,* the non-party union's members would still have their jobs, but with one less task at the same rate of pay, whereas, if the plaintiff union won, the status quo would simply be maintained. Further, we do not agree, as contended by IBEW, that the Court's interpretation in *Scot Lad* of the Supreme Court's decision in *Transportation-Communication Employees Union v. Union Pacific Railroad Co.,* 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966), precluded tripartite arbitration in cases such as this. While we cannot ignore the Supreme Court's statement that in cases where the work in dispute existed at the time both collective bargaining agreements were executed, "it would be highly unlikely that each contract could be construed as giving each union the right to be paid for the single job", 385 U.S. at 161, 87 S.Ct. at 371, 17 L.Ed.2d at 268, later cases have demonstrated that result is entirely possible. *See e.g., Louisiana-Pacific Corp. v. IBEW, Local Union 2294,* 600

**3.** *CBS* differs factually from this matter in only one major regard. In *CBS,* one of the unions filed a grievance against the employer after the employer had assigned certain work to members of another union. The employer then filed a grievance against the union to whose members it had assigned the work. In this case, RCA has, of course, filed no formal grievance against the IBEW or vice versa.

F.2d 219 (9th Cir.1979) and *Armstrong World Industries, Inc. v. Garden Spot Lodge 928, supra.*[4]

The IBEW next argues that because it has not contracted to submit this dispute to tripartite arbitration, it should not be forced to do so by this Court. The same argument, however, has been rejected by many other courts either by implication or express ruling.

The Supreme Court in *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) stated that a collective bargaining agreement:

... is more than a contract, it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. (Citation omitted). The collective agreement covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry or of a particular plant. *Id.* at 578, 80 S.Ct. at 1351, 4 L.Ed.2d at 1415. *See also Transportation-Communication Employees Union v. Union Pacific R. Co., supra.* Pursuant to this rationale, numerous courts have ordered the submission of disputes such as this to tripartite arbitration where both collective bargaining agreements contained broad arbitration clauses requiring bipartite arbitration between the employer and the aggrieved union. Such is the case here.[5] Thus,

---

4. The Third Circuit in *Window Glass Cutters League v. American St. Gobain, supra,* in fact, recognized the mere potential and/or risk of the employer facing inconsistent arbitration awards as requiring joinder under F.R.Civ.P. 19 of the non-party union.

The Court stated:

It is clear that the (district) court felt that there was a *substantial risk* that arbitration of the dispute between only the Company and the League would expose the Company to the *risk* that the Ceramics Union would in turn institute a separate grievance against the Company leading *potentially* to conflicting awards. (Emphasis added).
*Id.* at 354.

We believe the same risk and/or potential exists in the instant case.

5. The arbitration clauses of the respective collective bargaining agreements are virtually identical. ¶ 11.04 of the RCA–IBEW National Agreement provides:

In arbitration under the Supplementary Local Agreements, the Company and the IBEW agree that the decision or award of the Arbitrator or Arbitration Board shall be final and binding on each of the parties and that they will abide thereby, subject to such laws, rules or regulations as may be applicable. The authority of the Arbitrator of Arbitration Board shall be limited to determining questions, grievances, or disputes which directly involve only the interpretation or application of the provisions of this National Agreement or the applicable Supplementary Local Agreements. The Arbitrator or Arbitration Board shall have no authority to add to, subtract from, or to change any of the terms of said Agreements....

The RCA–IBEW Supplementary Local Agreement ¶ 9.02, Step 5, further provides:

Any grievance which has not been finally settled or disposed of in accordance with the steps of the Grievance Procedure outlined above may be submitted to Arbitration ... by either party under the voluntary arbitration rules, then obtaining with the American Arbitration Association, except the Arbitrator shall be selected as follows: The (AAA) shall submit, as soon as possible, to each of the parties, duplicate lists of the names of eleven (11) persons qualified to act. The Union and the Company shall within fifteen days from the receipt of such lists, indicate the order of preference, if any, for the names on their respective lists. These lists shall be returned to the Association which shall, thereupon, select the Arbitrator from the name or names remaining.

The RCA–IAM Agreement, ¶ 11.01, Step 4, provides:

Any grievance which has not been finally settled or disposed of in accordance with the steps of the Grievance Procedure outlined above may be submitted to Arbitration ... by either Party under the voluntary arbitration rules, then obtaining with the (AAA), except the Arbitrator shall be selected as follows: The (AAA) shall submit, as soon as possible, to each of the parties, duplicate lists of the names of eleven (11) persons qualified to act. The Union and the Company shall, within ten (10) days from the receipt of such lists, indicate the order of preference, if any, for the names on their respective lists. These lists shall be returned to the Association which shall, thereupon, select the Arbitrator from the name or names remaining. The Parties agree that the decision or award of such Arbitrator shall be final and binding on each of the Parties and that they will abide thereby, subject to such laws, rules and regulations as may be applicable. The authority of the Arbitrator shall be limited to determining questions directly involving the interpretation or application of provisions of this Agreement,

the "contractual nexus" that did not exist in, *e.g., Laborers' International Union v. W.W. Bennett Construction,* 686 F.2d 1267 (7th Cir.1982), does exist here.[6]

We would be remiss if we did not recognize the fact that RCA has filed no formal grievance against the IBEW and, therefore, this is not simply a matter of ordering the joint resolution of separate arbitrations. See *CBS, supra.* However, we do not believe this prevents us from ordering the IBEW to participate in the arbitration of the seven grievances, or, in the alternative, if it chooses not to so participate, to be bound by the decision of the arbitrators as if it had participated. Its contentions are identical to what they would have been had it filed such a grievance. Additionally, had RCA filed such formal grievances, the parties would be in the same position they are today. Thus, while perhaps not in form, we are in substance merely ordering the joint resolution of an inter-union dispute.

The IBEW also argues that this Court should not grant the relief sought by RCA because six of the seven grievances involve work already completed. As to the seventh grievance, it argues that although an arbitration award in that instance might involve some form of prospective relief, it would have little or no prospective effect. We disagree with both arguments. There may indeed continue to be areas open to dispute over work assignments even after the conclusion of the seven arbitrations; however, the result of the arbitrations will have substantial impact on the parties' future conduct.[7] As recognized by counsel for the IBEW, an award in favor of the IAM in Grievance # 169831 (Plaintiff's Complaint, Ex. C–6) would, based on our interpretation of the grievance, return supervision of the "fume scrubbers" at the Lancaster facility to IAM member employees or require RCA to pay the IAM every time IBEW member employees performed such work. If the IBEW is not a party to the arbitration of this Grievance, it could simply file a grievance pursuant to its own collective bargaining agreement when, and if, RCA reassigned the work to IAM member employees.[8]

and no other matter shall be subject to arbitration hereunder. The Arbitrator shall have no authority to add to, subtract from, or to change any of the terms of this Agreement ... In no event shall the same question or issue be the subject of arbitration more than once....

6. We find Laborers' *International Union v. W.W. Bennett Construction* to be factually distinguishable from this case because the non-party union's contract with *W.W. Bennett,* which appears to have been only oral, contained no arbitration clause. Thus, the non-party union was not obligated to submit any dispute to arbitration, whether it be bipartite or tripartite in nature. The Court, in fact, indicated that, "Perhaps *CBS* could be extended to cover this situation if it were not for these absent elements", but stated, "a more precise interpretation of *CBS* (was) not necessary to decide (the) case" absent a contractual relationship between the non-party union and the employer which required arbitration of grievances at least between those two entities.

7. The RCA–IAM collective bargaining agreement provides that, "in no event shall the same question or issue be the subject of arbitration more than once". See Note 5. While the RCA–IBEW National and Supplementary Local Agreements do not include similar language and it is for an arbitrator and not this Court to interpret the ramifications of this provision, we

note it simply as a further indication of the precedential force the decisions in these arbitrations will have if they are tripartite in nature. Our decision would not differ, however, absent this language.

8. All parties appear to have failed to recognize the possibility that a single arbitration panel could conceivably find both unions are entitled to the work in question under their respective contracts. As stated by the Court in *ASPEP v. Engineers, supra,*

That view ... I think assumes that a tripartite arbitral proceeding has to wind up choosing sides as between the primacy of one union's claims and the total subordination of the other.... It may very commonly be the result but the very notion of a tripartite proceeding certainly, as I think articulated by the Supreme Court, is one in which the arbitrator is bound to consider both claims, both sets of collective bargaining relationships, the agreements relied on and the contextual history and perhaps indeed, reach a result which ... accommodates those varieties of interest in a way which in some instances would put more of a burden on an employer than an employer would reasonably expect to get.... I don't think there is any assurance that a tripartite arbitral proceeding is, from an employer's point of view, a security blanket against liabil-

Regarding the other six grievances, at least two of them, *i.e.,* Grievances # 169796 and # 169838 (Plaintiff's Complaint, Exs. C–2 and C–7), appear to involve extremely similar, if not identical, work. Once again, we cannot agree that the decisions of the arbitrator in these grievances will have no precedential force and, believing the same reasoning applies to the remainder of the grievances, we reject IBEW's argument as to those disputes also.

Finally, the IBEW argues that it would lose the benefits provided by its collective bargaining agreement with RCA if it were forced to join in the arbitration of these grievances at this late date. As stated earlier, we cannot conceive of any way in which the status of this matter would to-day differ had RCA and the IBEW gone through the process prescribed by their collective bargaining agreements. (See Plaintiff's Complaint, Ex. A, Supplementary Local Agreement ¶ 9.02, Steps 1 through 4). Thus, we do not believe the IBEW will be deprived of any benefits which this process might provide. As to the other facets of this argument, *i.e.,* the lack of discovery and participation in the selection of the arbitrators, we believe these problems will be avoided by the remedy which we have fashioned. *See Laborers' International Union v. W.W. Bennett Construction,* 686 F.2d at 1275, fn. 3.

For the reasons stated above, we will grant RCA's motion for summary judgment and deny those of the defendants IBEW and IAM.[9]

An appropriate order follows.

### ORDER

AND NOW, this 8th day of April, 1986, upon consideration of the parties' cross-motions for summary judgment and the replies filed in response thereto, IT IS ORDERED that:

1. The motion for summary judgment of plaintiff RCA Corporation is GRANTED;

2. The motions for summary judgment of the defendants IBEW and IAM are DENIED;

3. The parties and their respective representatives shall, within thirty (30) days of the date of this order, meet informally for the purpose of attempting to resolve this matter, to discuss each party's position regarding the seven (7) grievances filed by the IAM, and for whatever other reason allowed by their respective collective bargaining agreements pursuant to the procedures required before a formal grievance may be filed;

4. The parties shall, if necessary, within forty-five (45) days of the date of this order, resubmit the seven (7) grievances involved to arbitration under the voluntary arbitration rules then obtaining with the American Arbitration Association, except the Arbitrator shall be selected as follows: The AAA shall submit, as soon as possible, to each of the parties, duplicate lists of the names of eleven (11) persons qualified to act. The plaintiff and the defendants shall, within ten (10) days from the receipt of such lists, indicate the order of preference, if any, for the names on their respective lists. These lists shall be returned to the AAA which shall, thereupon, select the Arbitrator from the name or names remaining;

5. The IBEW may, if it so chooses, decline to participate in the arbitration of the grievances involved, in which case the arbi-

---

ity greater than that which would be imposed under either one or the other collective bargaining agreement.
*Id.* at 2102. (Pollak, J.)

RCA, if such should occur, will be required to live with this predicament. However, we believe the policies underlying the Taft-Hartley Act favor reaching that point based upon the collective reasoning of a single arbitration panel, and not as the result of different minds

hearing the same evidence and arguments on different dates.

9. The record before us indicates that the RCA–IBEW Agreements expired on December 1, 1985, and that the RCA–IAM Agreement expired on February 3, 1986. If the parties have through the contractual process remedied the conflicts which spurned this action, they may govern themselves accordingly.

trations stayed pending the outcome of this action may simply proceed; however, if the IBEW so chooses, it will be bound by the findings and conclusions of the Arbitrator in the seven (7) grievances under the terms of its collective bargaining agreement as if it had so participated; and

6. Judgment is entered in favor of the plaintiff RCA and against the defendants IBEW and IAM.