**ALBERICI–EBY, a Joint Venture,**
**Plaintiff–Appellant,**

v.

**LOCAL 520, INTERNATIONAL UNION OF OPERATING ENGINEERS,** Laborers International Union of North America, Local 218, Southern Illinois District Council of Carpenters of the United Brotherhood of Carpenters and Joiners of America, Local 633, et al., Defendants–Appellees.

Nos. 92–1816, 92–1830 and 92–1965.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 19, 1992.

Decided May 4, 1993.

Rehearing and Rehearing In Banc
Denied June 7, 1993.

---

728

Donald J. Meyer (argued), Vining & Meyer, Clayton, MO, for plaintiff-appellant.

Harold Gruenberg (argued), Bruce S. Feldacker (argued), Feldacker & Cohen, St. Louis, MO, Benjamin B. Allen, Sr., Smith & Allen, Alton, IL, Gerald Kretmar, Kevin F. Fagan, Appleton & Kretmar, Barry J. Levine (argued), Barbara Gumbel, Souders & Levine, St. Louis, MO, for defendants-appellees.

Before CUMMINGS, and MANION, Circuit Judges, and KAUFMAN, Senior District Judge.[*]

FRANK A. KAUFMAN, Senior District Judge.

In early 1990, the appellant, Alberici–Eby, was the general contractor for the construction of the Melvin Price Auxiliary Lock project at Lock and Dam 26 on the Mississippi River in Madison County, Illinois. In order to produce the concrete needed for the construction of the lock, Alberici–Eby found it necessary to erect a batch plant. Appellees are six unions: Operating Engineers, Laborer's, Carpenters, Electrical Workers, Plumbers and Pipefitters, and Ironworkers, all of whose members erected the batch plant. Prior to commencing construction of the batch plant, Alberici–Eby distributed to the six unions a document detailing the various functions to be performed in the construction of the batch plant. Each of the six unions was requested by Alberici–Eby to indicate

[*] The Honorable Frank A. Kaufman, Senior District Judge for the District of Maryland, is sitting by designation.

the work over which it claimed jurisdiction on behalf of its members, and each union responded. The Operating Engineers claimed exclusive jurisdiction over all of the construction of the batch plant (with some minor exceptions with which we need not concern ourselves). The Laborers contended that the work should be split equally between the Operating Engineers and themselves. The Ironworkers, Carpenters, Electricians, and Plumbers and Pipefitters each asserted rights to some portion of the total work claimed by the Operating Engineers and/or the Laborers. Faced with those conflicting jurisdictional demands, Alberici–Eby parcelled out the work on the basis of what it considered to be traditional craft lines. The Ironworkers, Electricians, Plumbers and Pipefitters, and Carpenters were assigned all of the work which they had requested. The Laborers and the Operating Engineers were each assigned substantial portions of the work, but not all to which they had laid claim. The totality of the work was in fact performed by members of the six unions in accordance with the assignments made by Alberici–Eby.

After all work in connection with the batch plant had been completed, the Laborers, on June 20, 1990, and the Operating Engineers, on June 25, 1990, filed grievances under their separate collective bargaining agreements (CBAs), protesting the work assignments. The Operating Engineers' grievance proceeded to arbitration and resulted in a decision by Arbitrator Maniscalco on February 13, 1991, sustaining the grievance.

Prior to and during that arbitration proceeding, Alberici–Eby contended that Arbitrator Maniscalco lacked jurisdiction to hear the Operating Engineers' claim because the claim arose out of a jurisdictional dispute and because jurisdictional disputes were expressly excluded from arbitration under Alberici–Eby's agreement with the Operating Engineers. Arbitrator Maniscalco concluded that he had jurisdiction over the the Operating

Engineers' claim because that claim did not arise out of a jurisdictional dispute between the six unions, but rather from a dispute over the interpretation of Article 28 of the collective bargaining agreement between Alberici–Eby and the Operating Engineers. As Arbitrator Maniscalco wrote: "The contract dispute in this case lies with the employer and not the other craft unions due to the unambiguous requirement of the employer to assign solely and exclusively [the work at issue] to [the Operating Engineers under] Article 28." Having determined that the dispute was properly before him, Arbitrator Maniscalco decided that the Operating Engineers were entitled to the disputed work and awarded them back pay for the work performed by others.

On March 5, 1991, Alberici–Eby filed a case in the court below, the United States District Court for the Southern District of Illinois, seeking to set aside the Maniscalco Award. By the time of the Maniscalco Award, the Laborers and Alberici–Eby had selected Arbitrator Bernstein to hear the Laborers' grievance, but the arbitration proceeding had not yet been held. By letter dated March 15, 1991, Alberici–Eby requested that Arbitrator Bernstein stay arbitration of the Laborers' grievance pending the outcome of Alberici–Eby's suit to vacate the Maniscalco Award. On April 21, 1991, Arbitrator Bernstein denied that request. Alberici–Eby then filed an Amended Complaint in the court below, adding the Laborers and the other four unions which are parties to this appeal as defendants, and seeking the following relief: 1) the setting aside of the Maniscalco Award in favor of the Operating Engineers, 2) the stay of proceedings before Arbitrator Bernstein involving the Laborers, and 3) an order compelling any defendant which sought further relief to submit the matter to multiparty arbitration in accordance with the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry ("the Plan").[1] The Operating Engineers filed a

---

1. Adopted by the Building and Construction Trades Department of the AFL–CIO in 1984, the Plan provides a forum for speedy resolution of jurisdictional disputes by means of multiparty arbitration before a single arbitrator. The Plan replaces the Impartial Jurisdictional Disputes Board (IJDB) which served the same end, albeit by using different procedures. Alberici–Eby refers throughout its briefs and in oral argument to the IJDB. We understand all such references to be to the Plan.

counterclaim, seeking the enforcement of the Maniscalco Award and dismissal of the action in the District Court. The Laborers sought an order compelling arbitration of their grievance before arbitrator Bernstein. The other defendant unions sought dismissal on the ground that the District Court lacked subject matter jurisdiction. All defendants sought award of costs and attorney's fees.

On cross motions for summary judgment, the District Court declined to grant any of the relief sought by Alberici–Eby. Also, the District Court granted summary judgment for the Operators and Laborers upon their respective counterclaims, and agreed with the contentions of the other defendants that it lacked subject matter jurisdiction over them. As to costs and fees, the District Court denied all claims for the same. Alberici–Eby timely noted its appeal from the judgment of the district court. The Laborers, Ironworkers, Plumbers and Pipefitters, and Electricians cross-appealed from the District Court's denial of costs and fees. We affirm.

## I

In this appeal, Alberici–Eby contends that the only appropriate vehicle for resolution of the within dispute is multiparty arbitration in accordance with the Plan established by the Building and Construction Trades Department of the AFL–CIO. Alberici–Eby contends that each of the six unions is bound to submit to the jurisdiction of the Plan either by virtue of express agreements with Alberici–Eby or derivatively through their affiliations with their respective international unions and the AFL–CIO. Alberici–Eby further asserts that our decision in *Local 416, Sheet Metal Workers International Association v. Helgesteel Corp.,* 507 F.2d 1053 (7th Cir.1974), establishes the IJDB (a precursor to the Plan) as the exclusive forum to hear and decide jurisdictional disputes when all

parties are bound to submit to its jurisdiction. Accordingly, Alberici–Eby urges us to vacate the Maniscalco Award, to stay the arbitration pending before Arbitrator Bernstein, to require any union seeking to press any claim with respect to construction of the batch plant to do so by resort to the Plan, and to award to it costs and fees incurred in the District Court and in this appeal. Because Alberici–Eby itself failed to invoke the multi-party arbitration mechanism in a timely fashion, we decline so to do.[2]

## II

■ Alberici–Eby was on notice that it faced the strong possibility of conflicting arbitral awards at least as early as June 25, 1990, at which time both the Laborers and the Operating Engineers had filed their grievances. Had Alberici–Eby desired to invoke the multiparty arbitration procedures which it now asks this Court to require all parties to this appeal to utilize, it could at that time either have filed a complaint with the Administrator of the Plan, or it could have brought suit to compel arbitration by the Plan under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Alberici–Eby did neither. Instead, Alberici–Eby chose to wait until the bipartite arbitration instituted by the Operating Engineers had been resolved against it before filing its initial complaint in the court below on March 5, 1991, and waited until the arbitrator in the proceeding instituted by the Laborers had declined to stay proceedings in the grievance hearing pending before him, before filing its Amended Complaint on May 6, 1991. In other words, Alberici–Eby waited eight months after June 25, 1990, when the Operating Engineers filed the second grievance and Alberici–Eby clearly became aware of the possibility of inconsistent arbitration

2. We note that the question of whether all the unions are bound to submit to multiparty arbitration is far from clear. To begin with, the unions dispute Alberici–Eby's contention that all parties have agreed so to be bound. However, for purposes of this appeal we assume, without determining, that multiparty arbitration involving Alberici–Eby and all six unions is still a possibility.

Also unclear is whether the Plan would presently accept jurisdiction over a dispute such as

this one, in which the work has already been performed, since the Plan apparently has no authority to award damages for misassigned work. Again, for purposes of this appeal, we assume, without determining, that the Plan would accept jurisdiction over this matter if this Court in this case decided that the parties to this appeal should submit to the Plan the within dispute.

awards, before instituting this suit and thus seeking multiparty arbitration. Alberici–Eby also waited another two months before naming all of the unions as parties-defendant.

In *Local 100A v. John Hofmeister and Son, Inc.*, 950 F.2d 1340 (7th Cir.1991), we held that a six month statute of limitations borrowed from § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applies to § 301 actions brought to compel arbitration under a collective bargaining agreement. *Id.* at 1346–48. *Hofmeister* involved an action to compel an employer to arbitrate a claimed wrongful discharge. We affirmed the holding of the district court that the seven month period which elapsed between the employer's refusal to arbitrate and the filing of the union's action to compel arbitration was so great as to bar the union's action as untimely filed. In so doing, we adverted to the "strong policy favoring settlement of labor disputes by private arbitration," *id.* at 1348, and noted that the application of lengthier state law limitations periods would " 'allow industrial disputes to fester' " too long. *Id.*, (quoting *Associated Brick Mason Contractors v. Harrington*, 820 F.2d 31, 37 (2d Cir. 1987)). Ultimately, we adopted the six month limitation period in order "to encourage prompt resolution of labor disputes." *Id.*

We further noted in *Hofmeister* that "because this refusal to arbitrate involves a termination without cause, which is an unfair labor practice under the NLRA, it seems particularly appropriate to borrow the NLRA limitations period." *Id.* No unfair labor practice appears to be present in the case at bar. However, there are aspects of the instant case which suggest with equal strength that the six month limitations period should be herein applied. The multiparty arbitration proceeding which Alberici–Eby now seeks to invoke is one which was carefully designed to produce a speedy resolution of jurisdictional disputes in order to permit work to be properly allocated before that

work is performed. Article V, Section 9 of the rules governing the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry provides that "[t]he Arbitrator is not authorized to award back pay or any other damages for a misassignment of work." The Administrator of the Plan further testified by way of an affidavit that "[t]he Plan's view is that if the work at issue has been completed, there is no reason to use its procedures which are designed to resolve disputes that threaten to delay and disrupt the progress of a construction project in progress." In view of the need for swift resolution of jurisdictional disputes, the same federal policies underlying *Hofmeister* prompt us to apply the rule enunciated in that case to the facts before us.[3]

In *Local 416, Sheet Metal Workers International Association v. Helgesteel Corp.*, 507 F.2d 1053 (7th Cir.1974), which is heavily relied upon by Alberici–Eby, we required, as sought by the company, the use of the IJDB. In *Helgesteel* it is arguable that the company delayed, after notice of the conflicting union demands, its initiation of its request for IJDB arbitration for considerably longer than a period of six months. However, in *Helgesteel*, while the work at the particular job site which was the focus of the initial dispute may well have been completed prior to the initiation of the case in federal district court by the company, there was apparently ongoing present and future similar work at other job sites involving the same unions. Further, when we decided *Helgesteel*, the limitations approach of *Hofmeister* was seemingly not presented by any of the parties, and *Hofmeister* itself was years away.

In *Laborers Intern. Union v. W.W. Bennett Const. Co.*, 686 F.2d 1267 (7th Cir.1982), which came along some years after *Helgesteel*, we declined to require IJDB arbitration in the light of the differing factual scenario, especially the differing contract language,

---

**3.** As previously noted in n. 2, *supra*, in the light of the apparent reluctance expressed by the Administrator of the Plan to accept jurisdiction in cases in which the work has been completed, there is some question as to whether it would be possible, in any event, for the within work assignment disputes to proceed to multiparty arbitration at this late date. Because resolution of

that question is rendered superfluous by our holding that the within case was untimely filed by Alberici–Eby, we do nothing more than note that, as a practical matter, future disputants would be well advised to seek arbitration under the Plan as soon as the necessity for such becomes apparent.

presented in *Bennett,* as opposed to *Helgesteel.* In any event, while the approach of *Helgesteel* itself would certainly seem to constitute excellent policy in many factual situations, there would appear to be little, if any, reason why that approach cannot be meshed with the requirement that the company proceed within a six month time period when it has notice of the conflicting union demands.

Accordingly, we hold that the § 301 action filed by Alberici–Eby to compel the unions to proceed with multiparty arbitration under the Plan was untimely filed.[4]

## III

Three issues remain for this Court's consideration: the validity of the Maniscalco award, Arbitrator Bernstein's refusal to stay the proceedings before him, and the District Court's refusal to award costs and attorneys' fees.

## A

On June 25, 1990, Operating Engineers Local 520 filed a grievance against Alberici–Eby challenging the latter's refusal to award the work performed with regard to the batch plant solely and exclusively to the Operating Engineers. The parties proceeded to arbitration and Arbitrator Maniscalco ultimately decided that the grievance was arbitrable in that it was not a jurisdictional dispute, but rather a grievance over the union's work preservation. Arbitrator Maniscalco awarded back pay to the union for the work performed by others.

Alberici–Eby sought by means of this case to overturn Arbitrator Maniscalco's award. The Operating Engineers, in their counterclaim, sought enforcement of the award. Upon cross motions for summary judgment, the District Court entered judgment against Alberici–Eby and in favor of the Operating Engineers. Alberici–Eby continues to press its claim that the Maniscalco Award must be vacated because (1) the grievance is not arbitrable and (2) the award does not derive its

essence from the contract. For the reasons which follow we affirm the District Court.

■ Whether a dispute is arbitrable is for the court to determine. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986); *International Assoc. of Machinists, Local No. 1777 v. Fansteel,* 900 F.2d 1005, 1010 (7th Cir.1990). "While we note that the arbitrator attempted to decide the arbitrability question, the resolution of this question is our responsibility and we will approach this issue *de novo* without deference to the arbitrator's decision." *Fansteel,* 900 F.2d at 1010.

> The Supreme Court has recognized that: [I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*AT & T Technologies,* 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Steel Workers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). The Supreme Court has also written that "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Warrior & Gulf,* 363 U.S. at 585, 80 S.Ct. at 1354.

■ Alberici–Eby asserts that the Operating Engineers' grievance was not arbitrable because its subject matter was excluded from the purview of the arbitration clause by Article 10 of the Labor Agreement between Alberici–Eby and the Operating Engineers which provides that:

> The parties hereby agree that in the event of a jurisdictional dispute with any other Union or Unions, the dispute shall be submitted to the impartial jurisdictional dis-

---

4. Only the Laborers appear to have raised the defense of the statute of limitations in the District Court. Inasmuch as the absence of any one of the unions would render impossible the resolu-

tion under the Plan of the claims of all unions to the work in dispute, we act in this appeal as if all six unions had raised the limitations defense below.

putes board for settlement in accordance with the plan adopted by the Building Trades Department, AFL–CIO.

But Article 10 does not tell us whether the subject of the grievance filed by the Operating Engineers was or was not a jurisdictional dispute. Rather, we must look to Article 28 of the Collective Bargaining Agreement (CBA) which provides:

> The operation, maintenance, repair, assembly and disassembly of all equipment, machinery and material plants listed and referred to in this agreement shall be performed solely and exclusively by employees covered by this agreement except where otherwise specifically provided herein and except for written agreements which make provisions for jurisdictional assignment entered into by the International Union of Operating Engineers and/or Operating Engineers, Local 520 with other building and construction craft unions, signatory to collective bargaining agreements with Employers party hereto.

The Operating Engineers filed their grievance against Alberici–Eby based upon Article 28 and Article 9, which lists the classes of work, alleging that Alberici–Eby's failure to assign the assembly of the batch plant solely and exclusively to the Operating Engineers constituted a violation of the terms of the CBA. Article 39 of the CBA provides that "... any difference or dispute arising out of the interpretation or application of any of the provisions contained in this Agreement ..." shall be submitted to an impartial arbitrator. The Operating Engineers' grievance arises out of the interpretation or application of the CBA. Alberici–Eby's failure to assign the work solely and exclusively to the Operating Engineers surely implicates Article 28, and the interpretation and application of Article 28 is thus the subject of a dispute between the company and the union which each had agreed to arbitrate. Accordingly, the grievance was arbitrable under the CBA.

■ In his opinion, Arbitrator Maniscalco determined that Alberici–Eby had violated the terms of the CBA by its failure to assign the work to the Operating Engineers and awarded the Operating Engineers back pay. Alberici–Eby now claims that that award

should be vacated as failing to draw its essence from the contract inasmuch as it is based upon a reading of Article 28 which ignores the two exceptions clauses of that article.

In order to vacate an arbitration award, a reviewing court must determine whether the award "draws its essence" from the contract which the arbitrator was asked to interpret. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). We have previously interpreted our duty in such cases as follows: "Since the arbitrator's function, ordinarily and in this case, is limited to interpreting the contract, the court asked either to set aside or to enforce his award must make sure that he abided by that limit on his authority, for otherwise the award was made in violation of the agreement to arbitrate." *Chicago Typographical Union v. Chicago Sun–Times*, 935 F.2d 1501, 1505 (7th Cir. 1991). Careful review of the arbitrator's award in favor of the Operating Engineers reveals that Arbitrator Maniscalco based his award solely upon his interpretation of the contract, including, as his opinion makes clear, the exceptions clauses of Article 28. As our decision in *Chicago Typographical, supra*, recognizes, "[f]ederal courts do not review the soundness of arbitration awards." *Id.* at 1504–1505. The arbitrator's interpretation of the contract "binds the court asked to enforce the award or to set it aside. The court is forbidden to substitute its own interpretation even if convinced that the arbitrator's interpretation was not only wrong, but plainly wrong." *Id.* at 1505 (citing *United Paperworkers v. Misco*, 484 U.S. 29, 37–38, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987)). Accordingly, it is enough for us to decide that Arbitrator Maniscalco's award comes from his own good faith interpretation of the disputed contract language. We need not inquire into the soundness of that interpretation, as Alberici–Eby apparently would have us do.

### B

■ Alberici–Eby also seeks review of the District Court's grant of summary judgment in favor of the Laborers upon their motion to

compel Alberici–Eby to arbitrate the grievance filed by the Laborers before Arbitrator Bernstein. In essence, Alberici–Eby claims that that dispute is arbitrable exclusively in a multiparty setting and that the District Court erred in permitting the bipartite arbitration proceeding before Arbitrator Bernstein to go forward. We disagree.

As we have already determined, *supra*, Alberici–Eby's action to compel multiparty arbitration under the Plan was untimely filed. Moreover, we have also previously noted that considerable uncertainty exists as to the availability of multiparty arbitration under the Plan after the work had been completed.[5] In the light of Alberici–Eby's failure to move in a timely fashion to achieve multiparty arbitration (assuming that such was available), it would be manifestly unjust to deny the Laborers an opportunity to be heard by way of bipartite arbitration. Accordingly, if the dispute is arbitrable under the terms of the CBA between Alberici–Eby and the Laborers, the proceeding before Arbitrator Bernstein should go forward.

In determining the arbitrability of a dispute under an arbitration agreement in a CBA, we employ the analysis set forth in the immediately preceding subsection of this opinion. In that context, Article 23 of the CBA between the company and the Laborers entitles the latter to proceed to arbitration. Article 22 of that CBA details the work which Alberici–Eby was to assign to the Laborers. A portion of that description includes work in conjunction with mixing plants. The Laborers contend that the batch plant construction work at issue here falls within the scope of that provision of Article 23. The question of whether Alberici–Eby should have assigned the disputed work to the Laborers is an issue of the type comprehended by Article 23 of the CBA, in which the parties specifically agreed to arbitrate "any differences which might occur between the employer and the union." The District Court, therefore, acted correctly in ordering Alberici–Eby to proceed before Arbitrator Bernstein.

5. *See* nn. 2 and 3, *supra*.

C

■ The Laborers, Ironworkers, Plumbers and Pipefitters, and Electricians appeal from the District Court's refusal to award attorneys' fees and costs. Those four unions together with the Operating Engineers also seek costs and attorneys' fees incurred in defending this appeal. This Court has previously required the losing party in labor arbitration cases to pay reasonable attorneys' fees and costs incurred by its opponent(s) when the arguments it has advanced are frivolous and/or vexatious. *See Dreis & Krump Mfg. v. International Ass'n of Machinists*, 802 F.2d 247, 254–56 (7th Cir.1986). But in this instance the arguments advanced by Alberici–Eby in the District Court or in this Court are hardly frivolous or vexatious. Accordingly, we affirm the District Court's refusal to award costs and fees below, and decline to make any such award in connection with this appeal.

AFFIRMED.