### SCHNABEL FOUNDATION CO., Plaintiff,

v.

### INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542, et al., Defendant.

No. 05–4296.

United States District Court,
E.D. Pennsylvania.

Jan. 27, 2006.

---

Ira B. Silverstein, Lisa Carney Eldridge, Thorp, Reed & Armstrong, LLP., Philadelphia, PA, Lawrence T. Zimmerman, Washington, DC, for Plaintiff.

Samuel L. Spear, Spear Wilderman Borish Endy Spear & Runckel, Joel P. Trigiani, Law Office of Joel P. Trigiani, Philadelphia, PA, for Defendant.

## MEMORANDUM

ROBRENO, District Judge.

This is an action to terminate an arbitration demanded by a union under the terms of a collective bargaining agreement. Plaintiff, Schnabel Foundation Company, filed suit against Defendants, International Union of Operating Engineers Local 542 ("IUOE") and Laborers' District Council of the Metropolitan Area of Philadelphia and Vicinity ("Laborers' Union"),[1] pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. IUOE and the Laborers' Union are both labor unions. Schnabel requests the Court dismiss a bilateral arbitration

---

1. Although Schnabel has no grievance against the Laborers' Union, Schnabel named it as a defendant because of the possibility that the Laborers' Union would be adversely affected if the bilateral arbitration were to proceed.

demanded by Defendant IUOE to resolve a claim that Schnabel wrongfully deprived IUOE members of work to which its members were entitled under the collective bargaining agreement between Schnabel and IUOE. Schnabel claims that the arbitrator has no jurisdiction over this dispute.

Before the Court are cross motions for summary judgment. For the reasons that follow, Schnabel's motion for summary judgment is granted and the arbitrator is directed to dismiss without prejudice the pending arbitration. IUOE's cross-motion for summary judgment is denied.

## I. FACTS

Schnabel is a subcontractor on a highway bridge construction contract in Montgomery County, Pennsylvania, engaged in performing temporary excavation to enable other subcontractors to reconstruct bridge structures at Belvoir Road and at Gallagher Road, both over the Pennsylvania Turnpike.[2] Schnabel is also engaged on similar work as a subcontractor on Route 309 in Montgomery County. Schnabel is subject to collective bargaining agreements negotiated by the Contractors Association of Eastern Pennsylvania (the "Association"), two of which are with defendants the Laborers' Union and IUOE.

Schnabel performed drilling work at the Belvoir Road site from February 23, 2005 until April 8, 2005. The work at the Gallagher Road site and the Route 309 site is ongoing. Traditionally, Schnabel has assigned its drilling work to the Laborers' Union, and its collective bargaining agreement with the Laborers' Union encompasses this drilling work. The work at the Belvoir Road site and the Gallagher Road site was assigned to the Laborers' Union pursuant to this collective bargaining agreement.

On May 4, 2005, after the assigned work at issue had been completed by the Laborers' Union, IUOE filed a grievance against Schnabel, seeking arbitration.[3] IUOE claims its members were entitled to be hired for the drilling work at the Belvoir Road site pursuant to its collective bargaining agreement with Schnabel.

IUOE's collective bargaining agreement with Schnabel contains two arbitration clauses: one for "Jurisdictional Disputes," and one for "Non–Jurisdictional Disputes and Grievances." IUOE brought its grievance pursuant to the non-jurisdictional dispute clause, requesting contractual damages for the non-assignment of work. The arbitration is currently scheduled for February 3, 2006.

Schnabel does not dispute that it is subject to overlapping, and conflicting, collective bargaining agreements with both the Laborers' Union and IUOE. Schnabel does, however, contend that because this matter entails, in essence, a dispute between unions over the assignment of work, it is a jurisdictional dispute, and must be resolved under the jurisdictional dispute clause in its collective bargaining agreement with IUOE. The jurisdictional dispute clause provides for the settlement of disputes under the "Plan for the Settlement of Jurisdictional Disputes in the Construction Industry" (the "Plan"), and would allow for a tripartite arbitration between Schnabel, IUOE, and the Laborers' Union.[4]

---

2. These facts are taken from the parties' Stipulation of Facts. (P.'s Mot. Summ. J., Ex. 1.)

3. The actual grievance indicates that IUOE is seeking damages for improper manning at the "Local 309 Bellvore Bridge Project." (P.'s Mot. Summ. J., Ex. 1–D.)

4. One apparent reason for the tripartite arbitration is to shelter Schnabel from the jeopardy of having to pay damages (equal to double wages under the collective bargaining agreement) to IUOE on top of already having paid the Laborers' Union for performance of the work.

IUOE does not consider this matter a jurisdictional dispute because it is not asking for the work to be reassigned, but is instead solely asking for damages for a lost work opportunity as provided by its collective bargaining agreement. Therefore, according to IUOE, the dispute is only between IUOE and Schnabel, and falls within the purview of the non-jurisdictional dispute clause.

Schnabel requests the Court find that this is a jurisdictional dispute, that the procedure invoked by the IUOE is inapplicable, that the arbitrator has no jurisdiction to hear the dispute, and to dismiss the arbitration. In the alternative, Schnabel requests the Court order a tripartite proceeding under the Plan. Schnabel also seeks attorneys' fees and costs. IUOE requests the scheduled arbitration be permitted to proceed.

## II. LEGAL STANDARD

A court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" only if its existence or non-existence would affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" only when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. *Id.* In determining whether there exist genuine issues of material fact, all inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party. *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 305–06 (3d Cir.2001) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). In a case such as this, where the parties have stipulated to the material facts, a court must only determine which party prevails as a matter of law. *Anderson*, 477 U.S. at 250–52, 106 S.Ct. 2505.

## III. ANALYSIS

### A. *Principles Governing the Arbitrability of Labor Disputes*

The principles governing the arbitrability of labor disputes are well-established. First, the arbitrability of a dispute is a matter of contract. A party cannot be required to arbitrate a matter that she has not agreed to subject to arbitration. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Second, it is the court, not the arbitrator, that determines the arbitrability of a matter: "[T]he question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *Id.* And third, in making its determination, a court is not to reach, nor to decide the merits of the matter. *Id.* at 649–50, 106 S.Ct. 1415.

IUOE argues that, in addition to these principles, the Court should be guided by the "presumption of arbitrability." This presumption provides that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 650, 106 S.Ct. 1415. The presumption is generally applicable to disputes where a broad arbitration clause provides for the arbitration of all disputes. *Trap Rock Industries, Inc. v. Local 825, International Union of Operating Engineers*, 982 F.2d 884, 888 n. 5 (3d Cir.1992).

Here, by contrast, the Schnabel/IUOE collective bargaining agreement is crafted so as to limit the types of disputes that can be heard under each of its dispute resolution clauses. Although each clause may apply broadly to its designated class of disputes, the parties agreed by the explicit terms of the collective bargaining agreement to distinguish between jurisdictional and non-jurisdictional disputes. Neither clause encompasses *all* disputes, and the presumption of arbitrability is immaterial to the Court's analysis here.

### B. *Application*

■ In determining whether a particular dispute is arbitrable under a collective bargaining agreement, a court must begin with the contractual language. *See, e.g., Trap Rock Industries,* 982 F.2d at 888 (quoting *Morristown Daily Record v. Graphic Communications Union, Local 8N,* 832 F.2d 31, 34–35 (3d Cir.1987)).

■ Here, the collective bargaining agreement between IUOE and the Contractors Association of Eastern Pennsylvania, to which Schnabel is bound, provides separate and distinct forums depending upon the nature of the dispute. Article IV of the agreement, titled "Disputes and Grievances," provides:

**Section 1—Jurisdictional Disputes**

Disputes involving work jurisdiction shall be resolved in accordance with a certain "Plan for National Joint Board for Settlement of Jurisdiction Disputes",[5] effective May 1, 1948, or any amendment thereto.

**Section 2—Non–Jurisdictional Disputes and Grievances**

All disputes and grievances of any kind and nature whatsoever arising under the terms and conditions of this Agreement and all questions involving the interpretation of this Agreement shall be referred to a grievance committee ... Should the grievance committee be unable to resolve the issue submitted ... the matter shall then be referred to an impartial arbitrator who shall be selected as follows: Application shall be made to the American Arbitration Association to submit a panel of five (5) arbitrators ... The Arbitrator thus selected shall conduct his or her Hearings or Proceedings in accordance with the Rules of the American Arbitration Association ...

Sections 1 and 2 of Article IV, when read together, make it apparent that the parties agreed to refer non-jurisdictional matters to arbitration pursuant to the rules of the American Arbitration Association ("AAA") and jurisdictional disputes to an industry board under the Plan.

The critical question is, therefore, whether the instant dispute is "jurisdictional." If so, it must be arbitrated under the Plan. If not, it must be referred to AAA arbitration.

A jurisdictional dispute is defined in the Plan as "a dispute between unions over the assignment of work and in which the Employer has an interest." (Ex. 1–E at 31.) *See also Office and Professional Employees v. Sea–Land Service,* 210 F.3d 117, 118 (2d Cir.2000) ("a jurisdictional labor dispute arises when two or more unions claim, under their respective collective bargaining agreements ... the right to perform the same work assignment") (citing *Transportation–Communication Employees Union v. Union Pacific Railroad,* 385 U.S. 157, 161, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966)).

IUOE contends that its grievance, as initially submitted on May 4, 2005, did not

---

**5.** The Plan for National Joint Board for Settlement of Jurisdiction Disputes has been amended and is currently titled, "Plan for Settlement of Jurisdictional Disputes in the Construction Industry," (the "Plan"). (Pl.'s Mot. Summ. J., Ex. 1–E.)

fall within the definition of a jurisdictional grievance under the definition of the Plan. That grievance was limited to activities conducted at the first stage of Schnabel's project, at Belvoir Road. The IUOE did not seek to abrogate the agreement between Schnabel and the Laborers' Union, but rather to secure contractual damages for its members under Article II, Section 9 of the collective bargaining agreement.[6]

Although the damages sought are contractual, the dispute here is jurisdictional. Notwithstanding its assertion that it does not actually want to work on Schnabel's projects, IUOE's grievance ultimately boils down to its contention that it has been deprived of an employment opportunity by another union. In order to be awarded damages, an arbitrator must first determine whether IUOE was the proper party to work on Schnabel's projects. In other words, the "nub of the dispute," is whether the Laborers' Union or the IUOE is entitled to do the work under its respective collective bargaining agreement with Schnabel. Because Schnabel awarded the work in question to the Laborers' Union, this matter falls squarely within the definition of a jurisdictional dispute.

The fact that the initial grievance involved work that has been completed does not remove this dispute from the ambit of the Plan. IUOE's failure to invoke the Plan promptly to resolve the alleged overlapping jurisdiction of IUOE and the Laborers' Union before the Belvoir Road project was over does not transform a ju-risdictional issue into a non-jurisdictional one. In fact, apparently foreshadowing the business need for expedited treatment of these types of disputes, the Plan provides an accelerated procedure for the resolution of jurisdictional disputes. *See Alberici–Eby v. Local 520*, 992 F.2d 727, 730 n. 1 (7th Cir.1993). The IUOE is not entitled to bypass the procedure and to seek arbitration under the alternative procedure reserved solely for non-jurisdictional disputes.

Nor is the alleged inability to collect damages under the Plan a justification. If under the Plan, IUOE cannot be awarded damages, that is the result of the agreement devised by the parties, and is not a flaw to be corrected by the Court.[7]

Squarely on point is *Local 513, International Union of Operating Engineers v. J.S. Alberici Construction Co.*, where the Eighth Circuit analyzed a collective bargaining agreement between a contractor, Alberici, and Local 513 that contained a clause excluding jurisdictional disputes from arbitration. 936 F.2d 390 (8th Cir. 1991). Alberici subcontracted painting work to a painting company that Local 513 claimed its members should have performed under its collective bargaining agreement with Alberici. Local 513 asserted that the nature of its dispute was the interpretation of the "subcontracting clause" in the agreement, and should therefore be arbitrated under the contract.

---

6. Article II, Section 9 of the collective bargaining agreement provides that double wages will be provided to employees in lieu of a lost employment opportunity.

7. Although IUOE asks the Court only to consider the grievance regarding the Belvoir Road site, it is reasonable to view this dispute as ongoing. *See RCA Corp. v. Local 1666, IBEW and IAMAW*, 633 F.Supp. 1009, 1014 (E.D.Pa.1986) (although some work included in filed grievances was completed, tripartite arbitration ordered because result of arbitration would have substantial effect on parties' future conduct). The Belvoir Road project was the first stage of a multi-stage project. The next stages will involve the same equipment and job assignments at issue in the current dispute. IUOE could still invoke the procedure under the Plan to ensure, at least, that it is not deprived of future work to which it may be entitled.

The Eighth Circuit found that to "characterize the dispute between Local 513 and Alberici as essentially a breach of contract action would overlook the nub of the dispute: the question of who should have the right to operate the compressors." 936 F.2d at 392. For this reason, the dispute should be resolved pursuant to the provision in the agreement regarding jurisdictional disputes. *See also Alberici–Eby v. Local 520, International Union of Operating Engineers,* 992 F.2d 727 (7th Cir.1993) (it "would certainly seem to constitute excellent policy in many factual situations" to send a dispute between a contractor and six unions to the Plan, but could not be done in the present case because the invocation of the mechanism was untimely).[8]

In the instant case, as in *Local 513,* the "nub of this dispute" is jurisdictional, and should be resolved under the provision for the resolution of jurisdictional disputes in the collective bargaining agreement, as agreed to by the parties. Therefore, the Court will order the pending arbitration dismissed without prejudice. Any party wishing to invoke tripartite arbitration under the Plan is free to do so. In such an event, the Plan provides for notice of the various unions and employers involved, and supplies a mechanism for the resolution of the dispute. (Pl.'s Mot. Summ. J., Ex. 1–E at 6–7.)

Finally, Schnabel requests attorneys' fees and costs, but has not pointed to any provision under the collective bargaining agreement or rule of law that would entitle it to such an award. Therefore, the request will be denied.

## IV. CONCLUSION

Schnabel's motion for summary judgment is granted. The arbitrator shall dismiss the demand for arbitration without prejudice and cancel the scheduled hearing. Schnabel's request for attorneys' fees and costs is denied. IUOE's cross-motion for summary judgment is denied.

## ORDER

**AND NOW,** this **27th** day of **January 2006,** upon consideration of Plaintiff's Motion for Summary Judgment (doc. no. 12), Defendant's Cross Motion for Summary Judgment (doc. no. 14), and Plaintiff's Response in Opposition (doc. no. 15), and after a hearing at which counsel for both parties participated, it is hereby **ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (doc. no. 12) is **GRANTED;**

2. Plaintiff's request for attorneys' fees and costs is **DENIED;** and

---

8. The IUOE attaches two recent American Arbitration Association decisions to its cross-motion for summary judgment in order to illustrate the proposition that a dispute such as this can be subject to arbitration under a non-jurisdictional dispute clause. Esbach Brothers, LP and Local 542, I.U.O.E., # 14300–01515–03, October 21, 2003, and I.U.O.E., Local 542 and Henkels & McCoy, # 14300–00742–01, September 20, 2002. In each of these cases, the arbitrator awarded contractual damages to IUOE where the work on a project had been assigned to a different union. These decisions are distinguishable from the situation at hand. In each case, either the existence or the content of the parties' collective bargaining agreement was in dispute. In Esbach Brothers, the company disputed the existence of a collective bargaining agreement with Local 542 and, in fact, did not appear at the hearing. In Henkels, the company contested IUOE's interpretation of the contract, asserting that the disputed employment opportunity was not covered by the parties' agreement. Here, Schnabel does not disagree that it was subject to overlapping agreements to perform the work at issue; the question is in which forum such an overlap should be resolved.

3. Defendant's Cross Motion for Summary Judgment (doc. no. 14) is **DENIED.**

**IT IS FURTHER ORDERED** that the arbitrator shall dismiss the demand for arbitration without prejudice and cancel the scheduled hearing.

**AND IT IS SO ORDERED.**

### JUDGMENT

**AND NOW,** this 27th day of **January 2006,** upon consideration of the Court's Order of January 27, 2006, **JUDGMENT** is entered in favor of Plaintiff and against Defendant.

The Court **DECLARES** that the instant dispute is not subject to Article IV, Section 2 (the non-jurisdictional dispute clause) of the collective bargaining agreement and **DIRECTS** the arbitrator to dismiss without prejudice the arbitration scheduled pursuant to the demand for arbitration by International Union of Operating Engineers Local 542.

**AND IT IS SO ORDERED.**